IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH T. DUGAN, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. |
| | : | |
| DIETZ & WATSON, INC., | : | JURY TRIAL DEMANDED |
| Defendant. | : | |
| | : | |

## COMPLAINT

1.    Working the third shift (often referred to as the graveyard shift) is no easy matter.  Sleep deprivation, disruptions in family life, and social isolation all come with the job.  But what does not, or should not, come with the job is a decision by an employer to fire an employee because of his disability and age.

2.    This is such a case.

3.    For nearly thirteen years, plaintiff Joseph Dugan was employed as a third shift warehouse supervisor for defendant Dietz & Watson, Inc. ("Dietz" for short).

4.    Throughout that time, Mr. Dugan always performed his job to the best of his ability and to Dietz's satisfaction.

5.    For most of those years, Mr. Dugan worked under the pall of cancer.  As a result, at times, after his shift ended, his wife took him to the hospital for chemotherapy, other treatments, and clinical trials.

6.    Mr. Dugan's medical condition and need for treatment were known to Dietz's HR Department as well as his supervisors and co-workers.  As they knew, on a

number of occasions, he was forced to take FMLA leave and paid time off so he could receive the treatment and care he required.

7.    At work, things went well until the beginning of 2025.  In January, Dietz appointed a new Operations Manager to oversee the warehouse where Mr. Dugan worked.  Aware of his cancer and age (Mr. Dugan was then 63), his Operations Manager took a number of adverse actions against him that affected his health and ultimately cost him his job.  Those actions included, among others:

- Altering his job duties knowing the changes would and did affect his health;

- Denying him the annual pay raise he was due;

- Accusing him of not scanning in products at a time Mr. Dugan was not at work and in treatment for his medical condition;

- Not engaging him in the interactive process required by the ADA;

- Suspending him for three days because he complained about being denied his pay raise; and then

- Terminating his employment on September 8, 2025 for no valid reason.

2

**JURISDICTION**

8. Subject matter jurisdiction over Mr. Dugan's ADA claim is conferred on the Court by 28 U.S.C. § 1331. Jurisdiction over his Age Discrimination in Employment Act claim is conferred by 29 U.S.C. § 626(c)(1) ("ADEA").

9. The Court has personal jurisdiction over the parties since they both reside in the Eastern District of Pennsylvania and plaintiff's claims for relief arose here as well.

**VENUE**

10. Venue over plaintiff's ADA and ADEA claims is properly laid here because both parties reside in the judicial district and plaintiff's claims for relief arose here as well.

**PARTIES**

11. Plaintiff Dugan resides at 2465 Webster Court in Bensalem, Pennsylvania.

12. Defendant Dietz & Watson, Inc., a distributor of meats and cheeses, has its principal place of business located at 5701 Tacony Street in Philadelphia, Pennsylvania.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. On October 22, 2025 plaintiff Dugan filed a charge of disability and age discrimination against Dietz with the Philadelphia District Office of the U.S. Equal Employment Opportunity Commission and assigned Charge No.: 530-2026-00567. The charge was dual filed with the Pennsylvania Human Relations Commission and assigned Case No. 2025-03413.

3

14.    On January 27, 2027, the EEOC issued a Right to Sue letter to plaintiff Dugan.  This lawsuit has been timely filed in accordance with that letter.[1]

**ADDITIONAL FACTS**

15.    Mr. Dugan began working for Dietz in November 2012.  Throughout the course of his employment, he was a Third Shift Supervisor at the company's warehouse where he typically worked from 10:00 p.m. until 6:00 a.m.

16.    In his nearly 13 years of employment at Dietz, Mr. Dugan was a hard-working, dependable and loyal employee of the company.

17.    At no time was he subject to discipline.  Moreover, on an annual basis, he regularly received increases in his pay as a result of his proven performance.

18.    Even the ravages of cancer could not keep him down.

19.    Diagnosed with chronic lymphocytic leukemia ("CLL") -- a cancer of the blood and bone marrow -- Mr. Dugan began necessary medical treatments in May 2015 at the University of Pennsylvania Abramson Cancer Center.

20.    Over time, his treatments included chemotherapy, transfusions, oncology trials and other medical procedures.

---

[1]    Upon either the closure of the PHRC case or the passage of one year from the October 22, 2025 date of his EEOC Charge, plaintiff Dugan intends to amend his Complaint to allege corresponding disability and age discrimination claims against Dietz for violations of his rights under the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 955(a).

21. Despite those treatments, Mr. Dugan showed up for work and performed his job duties which, among others, included overseeing a staff of about 30 employees and 14 production lines.

22. After his shifts concluded, Mr. Dugan was often taken by his wife for treatments at various hospitals and physicians' offices.

23. Dietz was on notice of Mr. Dugan's medical condition and need for treatment, including representatives of its Human Resources Department and the Operation Managers at its warehouse.

24. Dietz provided Mr. Dugan with FMLA leave and paid time off so he could receive the medical treatment and care he needed.

25. But things changed dramatically in January 2025.

26. In that month, Dietz assigned a new Operations Manager, Jason Sanchez, to oversee the warehouse where Mr. Dugan worked.

27. Mr. Sanchez, who is in his 30's, was promoted to that position by Dietz's management. He was aware that Mr. Dugan had cancer and needed treatments for it. He was also aware of Mr. Dugan's age -- 63 at the time.

28. In January 2025, Mr. Sanchez altered Mr. Dugan's job duties by adding inventory responsibilities to his job as a Warehouse Supervisor. Those duties required additional concentration that compromised his health and CLL condition. Mr. Sanchez did not, however, alter the job responsibilities of the First and Second Shift Warehouse Supervisors.

29. In February 2025, Mr. Sanchez and Dietz did not provide Mr. Dugan with an increase in his annual salary. This had never happened before. No other Warehouse Supervisor was denied an annual raise at that time.

30. In March 2025, Mr. Dugan was out of work most of that month due to a staph infection related to his CLL.

31. When he returned in early April 2025, Mr. Sanchez falsely accused him in front of others of not properly scanning certain products into the system the previous month. That was untrue as Mr. Dugan proved by pointing out that he was not at work when that happened.

32. In May 2025 Mr. Dugan received and presented to Dietz's Human Resources Manager, Donna Gormley, a letter from the Abramson Cancer Center advising that one of the side effects of Mr. Dugan's cancer medications was "brain fog," that causes "cognitive impairment." *See* Exhibit A attached hereto.

33. Despite receipt of that letter, Dietz did not engage Mr. Dugan in the interactive process required by the ADA, nor did it do anything to offer him any reasonable work accommodations in light of his symptoms.

34. In July 2025 Mr. Sanchez and Dietz suspended Mr. Dugan for three days without pay. That was done because of a complaint by Mr. Dugan the previous month to two other supervisors about Dietz's failure to give him the annual pay raise he deserved.

35. On Monday, September 8, 2025, right before his shift was to begin, Mr. Sanchez and Ms. Gormley telephoned and told Mr. Dugan that he was fired effective immediately.

6

36. They provided no prior notice nor any valid reason for that decision. Moreover, they did so despite knowing that he had cancer treatments scheduled that week that had to be canceled due to Mr. Dugan's sudden firing and Dietz's failure to provide him with timely notice of his COBRA rights.

37. Dietz had no performance or other lawful reason to terminate Mr. Dugan's employment.

38. After terminating Mr. Dugan, Dietz assigned a non-disabled substantially younger Warehouse Supervisor to replace him on the third shift.

39. Dietz's decision to terminate Mr. Dugan's employment was part of its practice to terminate the employment of older supervisors and replace them with substantially younger ones.

## CLAIMS FOR RELIEF

### COUNT I:

#### DEFENDANT'S VIOLATION OF PLAINTIFF DUGAN'S RIGHTS UNDER THE AMERICAN WITH DISABILITIES ACT

40. Mr. Dugan repeats and incorporates by reference all the allegations set out in paragraphs 1 through 39 of the Complaint.

41. By engaging in a series of adverse employment actions leading to and including plaintiff's termination from employment, defendant Dietz violated Mr. Dugan's rights under the ADA.

42.     As a direct and proximate result of defendant Dietz's violations of his ADA rights, Mr. Dugan has suffered and will continue to suffer a loss of earnings and employee benefits to which he is entitled.

43.     As a further direct and proximate result of defendant Dietz's violations of Mr. Dugan's ADA rights, he has suffered physical and emotional distress, embarrassment, humiliation and loss of self-esteem.

44.     Defendant Dietz took these adverse actions against Mr. Dugan in willful and/or reckless disregard of the rights accorded him by the ADA.

## COUNT II:

### DEFENDANT'S VIOLATION OF PLAINTIFF DUGAN'S RIGHTS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT

45.     Mr. Dugan repeats and incorporates by reference all the allegations set out in paragraphs 1 through 44 of the Complaint.

46.     By engaging in a series of adverse employment actions leading to and including plaintiff Dugan's termination from employment, defendant Dietz violated his rights under the ADEA.

47.     As a direct and proximate result of defendant Dietz's violation of his ADEA rights, Mr. Dugan has suffered and will continue to suffer a loss of earnings and employee benefits to which he is entitled.

48.     Defendant Dietz took these adverse actions against Mr. Dugan in willful and/or reckless disregard of the rights accorded him by the ADEA.

8

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph T. Dugan, respectfully requests the Court to enter judgment in his favor and against Defendant Dietz & Watson, Inc. and to award him the following remedies:

a.    An award of back pay;

b.    An award of front pay to the extent reinstatement is not feasible;

c.    An award of compensatory damages for all the non-wage injuries Mr. Dugan has suffered as authorized by the ADA;

d.    An award of liquidated damages in twice the amount of his lost wages as authorized by the ADEA;

e.    An award of punitive damages as authorized by the ADA;

f.    An award of reasonable counsel fees and costs; and

g.    Such other legal and equitable relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff Joseph T. Dugan demands a jury trial on all the legal claims set forth in his Complaint.

**RAYNES & LAWN**

By: _____

Harold I. Goodman, Esquire
2400 Market Street
Suite 314
Philadelphia, PA  19103
215-568-6190

Attorney for Plaintiff Joseph T. Dugan

Dated:  March 23, 2026

10

# Exhibit  A

# Exhibit  A

Letter by Torres, Jennifer, CRNP on 5/9/2025

 **Penn Medicine**
Abramson Cancer Center

**Penn Hematology Oncology Langhorne**

Jennifer Torres, CRNP, MSN

May 9, 2025

RE: Joseph Dugan
DOB: 8/21/1961
MRN: 007928880

To Whom It May Concern:

The above named pt receives treatment in our office and due to his medications, one of the side effects is "Brain fog" is a term for a range of symptoms that cause Cognitive impairment. This affects your ability to think clearly, focus, concentrate, remember and pay attention."

If you have any questions or concerns please give us a call @ 215-752-2424.

Thank you for your consideration,

Jennifer Torres, CRNP
JT/mm

**Penn Hematology/Oncology Langhorne**
240 Middletown Boulevard, Suite 204, Langhorne, PA 19047 • Phone  215.752.2424 • 215 750.0656

## Communication Routing Information

| Recipient | Relationship | Method | Details |
|---|---|---|---|
| No recipients have been found. | | | |